# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN H. MARSHALL,

    Plaintiff,                        CIVIL ACTION NO. 13-14255

  v.                              DISTRICT JUDGE MARK A. GOLDSMITH
                                      MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work from April 2007 through January 2010.

II.     **REPORT**

   A.   **Introduction and Procedural History**

Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income benefits on April 26, 2007, alleging that he had become disabled and unable to work on April 13, 2007, at age 44, due to acute respiratory failure, obstructive pulmonary disease, sleep apnea and congestive heart failure. Benefits were initially denied by the Social Security Administration. A requested de novo hearing was held on February 21, 2012[1], before Administrative Law Judge (ALJ) David Begley. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of sedentary work between April 13, 2007, the alleged onset date, and January 27, 2010, when he was found to be totally disabled by the SSA[2]. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits prior to January 27, 2010, was supported by substantial evidence on the record.

Plaintiff was 49 years old at the time of the administrative hearing (TR 41). He had graduated from high school, and had been employed during the relevant past as a operator

---

[1] An earlier hearing was held before a different ALJ on October 1, 2009 (TR 58-70), resulting in a decision to deny disability benefits. The Appeals Council subsequently remanded the matter for further administrative consideration of two treating source opinions.

[2] While the appeal before the Appeals Council was still pending, Plaintiff filed another application for disability benefits on February 28, 2010. An initial determination was made by the SSA that claimant was disabled as of January 27, 2010. The Appeals Council affirmed the finding by the state agency that Plaintiff was disabled as of January 27, 2010 (TR 90).

2

and repairman of office machines (TR 42, 63). Claimant stopped working in April 2007, due to severe fatigue caused by shortness of breath upon exertion (TR 42).

Despite chronic breathing problems, Plaintiff acknowledged that he still smoked one-half pack of cigarettes each day (TR 45). At the time of the remand hearing in February 2012,, Claimant believed that his pulmonary condition was about the same as it was in April 2007 (TR 47). He said he could not lose weight because he could not exercise[3] (TR 48). Plaintiff allegedly used a cane to help him walk since 2007 (TR 48). Claimant had not seen any doctor since August 2011, and that his inhaler medication had not been modified since 2007 (TR 49, 51). Plaintiff explained that he could not afford to use home oxygen or carry an extra inhaler (TR 46, 51). When the ALJ questioned how he could afford cigarettes, but not oxygen, claimant commented that oxygen was too expensive (TR 46). Plaintiff thought that he could take a gallon of milk out of the refrigerator (TR 50-51).

A Vocational Expert, Selena Earl, classified Plaintiff's past work as light to medium, unskilled activity (TR 54). The witness testified that there were no jobs for claimant to perform if his testimony were fully accepted[4] (TR 55-56). If he were capable of sedentary work, however, there were numerous unskilled surveillance system monitor, telephone solicitor, and charge account clerical jobs that he could perform with minimal vocational adjustment (TR 55). These jobs did not require the climbing of ladders, ropes or scaffolding.

---

[3] At the time of hearing, claimant stated that he weighed 362 pounds (TR 41).

[4] The witness opined that, if claimant needed to alternate between sitting and standing to alleviate his pain, or required two extra 20-minute rest periods beyond normal breaks and a lunch period, all work activity would be precluded (TR 55-56).

There would be no exposure to heat, cold, humidity, chemical fumes, odors, dust, gases or poorly ventilated areas. He would not have to work around hazardous machinery, unprotected heights or open flames (TR 55).

### B.  ALJ Findings

The Administrative Law Judge found that Plaintiff was impaired prior to January 2010, as result of congestive heart failure, chronic obstructive pulmonary disease (COPD), sleep apnea, hypertension and morbid obesity, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's multiple impairments limited him to jobs that did not require climbing ladders, ropes or scaffolds. He had to avoid exposure to heat, cold, humidity, fumes, odors, dust, gases, poorly ventilated areas, hazardous machinery, unprotected heights and open flames. He would require a hand held device to stand and ambulate. Nevertheless, the ALJ found that the claimant retained the residual functional capacity, prior to January 27, 2010, to perform a significant number of sedentary jobs, as identified by the Vocational Expert (TR 26-32).

### C.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### D. Discussion and Analysis

After review of the record, I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of sedentary work prior to January 27, 2010. Contrary to Plaintiff's assertion, the medical evidence during the relevant time period does not support his allegation of totally disabling functional limitations caused by his multiple impairments. The ALJ's decision was consistent with the specific limitations imposed by examining physicians prior to January 2010.

Dr. James Miller, a treating family practitioner, reported on May 10, 2007, that Plaintiff could occasionally lift or carry 10 pounds (TR 441). The doctor indicated that the claimant could stand or walk less than two hours in an 8 hour workday, and that an assistive device was not medically required or needed for walking (TR 442).

A treating internist, Dr. Aamer Bhurgri, stated in April 2008, that claimant could lift and carry up to 25 pounds occasionally and 10 pounds frequently (TR 446). Dr. Bhurgri added that Plaintiff could use both hands to grasp, reach, push, pull and perform fine manipulation (TR 446). Agreeing with Dr. Miller, the treating internist concluded that Plaintiff could stand and/or walk for less than two hours in a normal workday, and that an assistive device was not required (TR 446).

Dr. James Doyle, another family practitioner, indicated on April 23, 2009, that Plaintiff could occasionally lift or carry less than 10 pounds, stand and/or walk less than two hours, and could sit less than 6 hours in an in an 8 hour workday (TR 485). Dr. Doyle concluded, however, that an assistive device, such as a cane, was medically required for ambulation (TR 485). As discussed above, the ALJ accommodated the limitations that Plaintiff has in standing and walking by allowing him to use an assistive device (TR 30). The vocational expert testified that the need of a cane for ambulation and standing would not prohibit the performance of the identified sedentary jobs that claimant remained qualified to perform (TR 55).

The ALJ's determination that the claimant needed to use a cane when standing or walking adequately compensated for the residual capacity differences between the three

...

treating physicians. Taken together with claimant's admission that he could lift a gallon of milk from the refrigerator (TR 50), there is substantial evidence in the record that he remained capable of performing the less demanding exertional requirements of sedentary work with the postural and environmental restrictions found by the Law Judge.

The ALJ's determination that the claimant remained capable of performing a limited range of sedentary work activity is also supported by the paucity of medical treatment of claimant's various ailments found in the record between April 2007 and January 2010. Plaintiff asserts that the ALJ improperly considered the opinions of the three treating physicians who evaluated his residual capacity during this period. While portions of their respective opinions can be seen as supporting a finding of disability, other parts of their reports are either consistent with the ALJ's findings, or, with respect to lifting, indicate greater capabilities than the ALJ found. Since these doctors used pre-printed forms, rather than detailed treatment notes, it is very difficult to ascertain whether these doctors believed that Plaintiff was totally disabled from all work activity prior to January 2010. This ambiguity was compounded by the fact that the claimant only sought medical treatment on an irregular basis. Plaintiff testified in February 2012, that he had not gone to the doctor in over six months (TR 49), and that his inhaler medication had not been modified in over five years even though his pulmonary problems had allegedly grown worse over time (TR 51).

Plaintiff's credibility regarding the disabling nature of his cardio-pulmonary impairments was further undermined by his continued smoking habit. This is not just a case

where the claimant aggravated his condition by refusing to stop smoking. Rather, the claimant has placed smoking ahead of obtaining his medications. When the ALJ asked Plaintiff about his need for nighttime oxygen, he replied that he could not afford nighttime oxygen because it was too expensive (TR 46). Similarly, when asked about his medications, the claimant acknowledged that his doctors wanted him to carry two inhalers, but that he did not do so because "they're really expensive" (TR 51). Consequently, this is not just a case where the claimant is aggravating his condition by continuing to smoke against doctors' orders. It is one in which Plaintiff has chosen not to avail himself of medications that his doctors have prescribed in order to purchase cigarettes. See Hardaway v. Secretary of Health & Human Services, 823 F.2d 922, 927 (6th Cir. 1987) ("There is also evidence indicating that [the claimant] has refused to use or neglected to use the drugs.").

 By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments . The Commissioner, however, met his burden of proving the existence of jobs prior to January 2010, which accommodated claimant's known restrictions . In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his significant impairments, the Vocational Expert testified that there were numerous surveillance system monitor, telephone solicitor, and charge account clerk jobs that he could perform with minimal vocational adjustment (TR 55). These jobs did not require the climbing of ladders, ropes or scaffolding. There would be no exposure to heat,

cold, humidity, chemical fumes, odors, dust, gases or poorly ventilated areas. There would be no need to avoid hazardous machinery, unprotected heights or open flames (TR 55).

Given the objective clinical findings of the examining physicians of record during the relevant period, I suggest that substantial evidence exists on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity. In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                                CHARLES E. BINDER
Dated: November 6, 2014                     United States Magistrate Judge