UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN H. MARSHALL,

        Plaintiff,                                   Civil Action No. 13-CV-14255

v.                                               HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER (1) ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 18), (2) OVERRULING PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION (Dkt. 19), (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 16), AND (4) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 14)**

## I.    INTRODUCTION

In this social security case, Plaintiff John Marshall appeals from the final determination of the Commissioner of Social Security that Plaintiff is not disabled and therefore not entitled to disability benefits. The matter was referred to Magistrate Judge Charles E. Binder for all pretrial proceedings. The parties filed cross motions for summary judgment (Dkts. 14, 16), and Magistrate Judge Binder issued a Report and Recommendation ("R&R"), which recommended denying Plaintiff's motion and granting Defendant's motion. Plaintiff filed objections to the R&R (Dkt. 19) and, to date, Defendant has not filed a response. For the reasons that follow, the Court accepts the recommendation contained in the R&R, overrules Plaintiff's objections, grants Defendant's motion for summary judgment, and denies Plaintiff's motion for summary judgment.

## II.  FACTUAL BACKGROUND

Plaintiff's testimony and the ALJ's findings have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated here. However, the R&R did not contain a summary of Plaintiff's medical records. Therefore, the Court includes a brief description of the findings in those records here.

Plaintiff filed for disability alleging that his emphysema, chronic obstructive pulmonary disease ("COPD"), sleep apnea, and congestive heart failure limited his ability to work. Administrative Record ("A.R.") at 246. In a function report, Plaintiff asserted that he could not walk far distances, stand for long periods of time, or perform any house or yard work, with the exception of laundry. Id. at 254, 255. He stated that he "get[s] short of breath some times [sic] and tire[s] easily." Id. at 256. He also stated that he could only walk about 200 feet before needing to rest, and that he occasionally used a cane. Id. at 258, 259. His daily activities were limited to socializing with his neighbors, watching television, and playing computer games; he shopped about once a week and drove his son to work. Id. at 253, 256. He enjoyed building plastic models, but did not spend as much time on them as he had done previously because he tired easily. Id. at 257.

In April 2007, Plaintiff was admitted to the hospital after being found collapsed near a dumpster while walking to his work. Id. at 306. His diagnoses were acute exacerbation of COPD, acute respiratory failure, acute congestive heart failure, tobacco dependency, and morbid obesity. Id. at 303. While admitted, Plaintiff also complained of edema in his lower extremities, snoring, and excessive daytime sleepiness. Id. at 312-313. Plaintiff underwent a M-Mode and 2-D echo to assess for "abnormal pericardial effusion" and, despite the "suboptimal quality study," doctors indicated the results were normal. Id. at 350-351. A Doppler study showed mild aortic

insufficiency and mild pulmonary hypertension, but no clots or deep vein thrombosis were observed. Id. at 351, 353. A discharge summary indicates that an initial chest x-ray "showed diffuse interstitial densities, secondary to probable pulmonary edema," but that serial x-rays "showed progressive resolution of these changes." Id. at 303. After approximately a week in the hospital, he was discharged in satisfactory condition. Id. at 303-304. It was recommended that he quit smoking and pursue aggressive weight loss. Id. at 304.

Upon his discharge, Plaintiff followed up with a physician at Monroe Medical Associates, P.C. Plaintiff reported feeling okay, but also stated that he tires easily, cannot walk a lot, and has periods of shortness of breath; upon examination Plaintiff had a regular cardiac rhythm and normal respiratory effort. Id. at 364-366. Plaintiff also saw Dr. Doyle on several occasions post-hospitalization. Dr. Doyle's treatment notes indicate that at times Plaintiff felt good and had no complaints, id. at 416, 420, 422, 425, 426, 454, 464, 495; at other times he complained of back and shoulder pain, id. at 419, 421, 422, 423, 424, and shortness of breath, id. at 418, 419, 423, 458. Chest x-rays showed mild to moderate degrees of pulmonary vascular congestion and hyperinflated lungs consistent with COPD; the overall impression was that Plaintiff's vascular congestion was stable. Id. at 431. Plaintiff's shoulder pain was indicative of rotator cuff pathology, id. at 433, and Plaintiff eventually underwent physical therapy, which was successful in improving Plaintiff's pain and range of motion, id. at 486, 487. Plaintiff also underwent several sleep studies and responded well to positive pressure therapy. Id. at 435, 448. Plaintiff complained of shortness of breath to other physicians, as well. Id. at 438, 443. Plaintiff underwent another x-ray, which showed hyperinflated lungs, which was, again, consistent with COPD; the x-ray also showed mild cardiomegaly and clear lungs. Id. at 481.

### III.     STANDARD OF REVIEW

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by [the ALJ]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013).

### IV.     ANALYSIS

Plaintiff advances two objections in support of his position that the ALJ's disability determination was in error. The Court addresses each in turn.

#### A.  First Objection

In the R&R, the Magistrate Judge suggested that the disability decision was consistent with the limitations identified by Plaintiff's treating physicians. R&R at 5 (Dkt. 18). Plaintiff objects that the ALJ failed to provide good reasons for rejecting the medical opinions of Plaintiff's treating physicians, thereby violating the treating-physician rule. Obj. at 3 (Dkt. 14). Plaintiff argues that the ALJ did not explicitly refer to which portions of the record counseled

4

against accepting those opinions, that the ALJ inserted his own lay opinion in substitution for those of Plaintiff's physicians', and that the ALJ relied on out-of-context statements that Plaintiff was doing well.  Id.  The Court concludes that while the ALJ did not follow the procedural protections of the treating-physician rule, he nonetheless made findings consistent with the limitations contained in the treating-source opinions, thus rendering any error harmless.

The treating-physician rule provides for the amount of deference a decision-maker must give to the opinions of the claimant's treating physician.  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (ALJ must "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians.").  The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [the] impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  The treating source's opinion must be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Id. § 404.1527(c)(2).

If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must (i) determine how much weight to assign to the opinion, and (ii) support the determination of how much weight to give with "good reasons."  See Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 550 (6th Cir. 2010); Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007).  In doing so, the ALJ must consider certain relevant factors, as listed in the regulations. See 20 C.F.R. § 404.1527(c)(2) (outlining factors to be applied in the event a treating physician's

opinion is not given controlling weight). The ALJ's reasons must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Rogers, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). A failure to sufficiently identify those reasons or how those reasons affected the ALJ's consideration of the treating-source opinion may "denote[] a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Id. at 243.

Importantly, however, the Sixth Circuit has made clear that this "is not to say that a violation of the procedural requirement of [the treating-physician rule] could never constitute harmless error." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004). The Wilson court identified four potential situations in which a failure to abide by the treating-physician rule might be held to be harmless: (i) if the violation was a de minimis one; (ii) "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (iii) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; and (iv) if the goals of the procedural protections had been adequately met despite a lack of compliance with the terms of the regulation. Id. at 547. See also Johnson-Hunt v. Comm'r of Soc. Sec., 500 F. App'x 411, 419 (6th Cir. 2012) (identifying three criteria for harmless error in the treating-physician context: where an opinion is patently deficient; where the Commissioner adopts the opinion or makes findings consistent with the opinion; and where the goal of the good-reasons requirement has been met).

Here, the ALJ did not give Plaintiff's three treating-physician opinions controlling weight. See A.R. at 29-30. Instead, he accorded various portions of the treating physicians' opinions "little" or "some" weight. Id. In support of his determinations, the ALJ stated simply

that the medical opinions either overstated or understated the extent of Plaintiff's limitations and were inconsistent with the medical evidence of record. Id. The ALJ did not consider any of the factors described by § 404.1527(c)(2). However, despite the ALJ's summary rejection of the treating physicians' opinions, the ALJ's RFC either incorporated the limitations described by Plaintiff's treating physicians or imposed restrictions on Plaintiff's ability to work beyond what the treating physicians recommended.

For instance, Dr. Miller, a treating family practitioner, completed a Medical Examination Report in May 2007. A.R. at 377-378. In that report, Dr. Miller indicated the following: Plaintiff was limited to lifting less than ten pounds on an occasional basis; Plaintiff could stand or walk for less than two hours in an eight-hour day, but did not require an assistive device; and Plaintiff became "very short of breath with any amount of walking or lifting." Id. at 378. About a year later, in April 2008, Dr. Bhurgri, a treating internist, filled out a similar form stating the following: Plaintiff was limited to occasional lifting of 20 to 25 pounds, but could frequently lift ten pounds or less; Plaintiff could stand or walk for less than two hours in an eight-hour day and did not require an assistive device; and Plaintiff had no physical limitations in performing repetitive actions in his upper or lower extremities. Id. at 446. A year after that, Dr. Doyle, a treating family practitioner, filled out the same form indicating the following: Plaintiff was limited to only occasional lifting of less than ten pounds; Plaintiff could stand or walk for less than two hours in an eight-hour work day and a cane was medically necessary; Plaintiff could sit for less than six hours in an eight-hour work day; and Plaintiff was unable to perform repetitive action with his upper and lower extremities, with the exception of simple grasping. Id. at 485.

In the RFC, the ALJ restricted Plaintiff to sedentary work except that he could never climb ladders, ropes, or scaffolds; could only occasionally climb ramps or stairs, balance, stoop,

7

kneel, crouch, or crawl, and required a hand-held assistive device to stand and walk. Id. at 27. Under the regulations, sedentary work is defined as work that,

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Restricting Plaintiff to a subset of sedentary work adequately accommodated Plaintiff's treating physicians' concerns regarding Plaintiff's limitations with respect to lifting and standing/walking. In fact, by restricting Plaintiff to sedentary work in the first instance, and in requiring that Plaintiff be permitted to use a hand-held assistive device to stand and walk, the ALJ's RFC credited physical limitations beyond what Dr. Miller and Dr. Bhurgri found. Sedentary work would have required Plaintiff to lift no more than ten pounds, and only on an occasional basis, and would have restricted Plaintiff to only occasional walking or standing, with the assistance of a hand-held device. Thus, the RFC appears to accommodate Dr. Doyle's medical opinion — the most restrictive of the three.[1] This conclusion is buttressed by Plaintiff's failure to offer any limitations or restrictions identified by his physicians that should have been, but were not, included in the RFC.

Because the ALJ made a RFC finding that was consistent with the most restrictive of Plaintiff's treating-physicians' opinions, the Court concludes that the failure to adhere to the procedural protections of the treating-physician rule is harmless error. Plaintiff's first objection is overruled.

---

[1] Although the record contains statements from Dr. Miller that he had released Plaintiff from work indefinitely, A.R. at 443, those statements are not entitled to controlling weight because they speak to the ultimate determination of disability — an issue reserved for the Commissioner's determination. 20 C.F.R. § 404.1527(d)(1).

### B. Second Objection

The Magistrate Judge also suggested that the ALJ's credibility determination was properly supported by the evidence of record. R&R at 7-8. Plaintiff objects that the ALJ erred by focusing his credibility assessment of Plaintiff solely on Plaintiff's failure to quit smoking and lose weight. Obj. at 4-5. Plaintiff further argues that while he has reduced his cigarette consumption, the addictive nature of smoking should preclude the ALJ from taking Plaintiff's habit into consideration as a matter of both law and equity. Id. Plaintiff also takes issue with the ALJ's statement that Plaintiff's ability to perform substantial gainful activity would be restored if he quit smoking and lost weight, as unsupported by any medical documentation. Id. at 4. Accordingly, Plaintiff asserts that the ALJ's decision was not in line with the regulations governing a claimant's failure to follow prescribed treatment. Id. As discussed below, the Court rejects both of these contentions: under Sixth Circuit precedent, the ALJ was permitted to consider Plaintiff's continued smoking habit in evaluating his credibility; additionally, the ALJ never found Plaintiff to be disabled in the first instance, rendering the Commissioner's policy on a claimant's failure to follow prescribed treatment wholly inapplicable to Plaintiff's claim.

One of the prime functions of the ALJ is to determine credibility issues because, in social security cases, courts do not make their own credibility determinations. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997) (stating that courts "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (quotation marks omitted)). In making a credibility determination, an ALJ may rely on his "own reasonable assessment of the record over the [plaintiff's] personal testimony." White v. Comm'r of Soc. Sec., 572 F.3d 272, 287 (6th Cir. 2009). Thus, a court can merely evaluate "whether or not the ALJ's explanations" for credibility

"are reasonable and supported by substantial evidence in the record." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). Notably, however,

> the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.
>
> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

Rogers, 486 F.3d at 247-248 (citations and footnote omitted).

The ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent those statements deviated from the ALJ's finding that Plaintiff could perform a modified range of sedentary work. A.R. at 27. The ALJ explained that, in accordance with Social Security Ruling 96-7p, he considered the objective medical evidence, the type, dosage, and any side effects of prescribed medication, and any additional treatment, aside from medication, the claimant has undergone. Id. at 28. It is true

that the ALJ found that Plaintiff's failure to quit smoking and lose weight indicated that Plaintiff's symptoms were not as severe as alleged, id., but to conclude that the ALJ's credibility determination was based solely on those factors would be an overstatement.

For instance, the ALJ also found that Plaintiff did not experience any side effects from his medications and that his Albuterol dosage had remained the same since 2007, indicating that Plaintiff's condition was stable. Id. at 27. The ALJ noted that Plaintiff had been "hospitalized for 'acute exacerbation' of [his] symptoms," but that medical evidence since Plaintiff's hospitalization suggested that his symptoms were not as severe as alleged. Id. at 28. In support, the ALJ referenced medical studies that either appeared normal or demonstrated only mild abnormalities. Id. The ALJ also called attention to Plaintiff's "sporadic follow-up of [his] conditions post-hospitalization," and noted that many of Plaintiff's post-hospitalization records show that Plaintiff "was 'doing fine' or 'feeling okay.'" Id. Finally, the ALJ noted that Plaintiff's sleep apnea appeared to respond well to positive pressure therapy and it was recommended that Plaintiff use a continuous positive airway pressure ("CPAP") mask. Id. at 29. All of these findings reasonably support the ALJ's credibility determination.

The ALJ's credibility determination is also supported by substantial evidence in the record. In a follow-up to Plaintiff's hospitalization, treatment notes observe that Plaintiff's respiratory effort was normal, his lungs were clear, and his heart had a regular rhythm. Id. at 366. Plaintiff's post-hospitalization records contain intermittent references to shortness of breath, id. at 419, 438, 443, 447, 457, 458, but other records indicate that Plaintiff was not experiencing shortness of breath, id. at 454, 465, and still others indicate that Plaintiff had no

complaints or was feeling good, id. at 425, 455, 459, 461, 495.[2] Plaintiff's records also indicate that he successfully completed physical therapy for his shoulder, which consisted of therapeutic exercise, manual therapy, and a concurrent home exercise program. Id. at 486, 487. Thus, the medical record contains sufficient evidence for the ALJ to conclude that Plaintiff's symptoms were not so severe as to preclude him from performing sedentary work. The ALJ's explanations, taken together, and in light of the record as a whole, for discounting Plaintiff's credibility are sufficiently reasonable. See Blaim v. Comm'r of Soc. Sec., -- F. App'x --, 2014 WL 6997509, at *3 (6th Cir. 2014). Consequently, the Court will not disturb the ALJ's credibility determination. Jones, 336 F.3d at 476.

The cases on which Plaintiff relies to argue that the ALJ's emphasis on Plaintiff's refusal to quit smoking was legally unwarranted do not compel a different result. In Shramek v. Apfel, 226 F.3d 809, 811-812 (7th Cir. 2000), the ALJ made a credibility determination on three factors, one of which was the plaintiff's failure to follow treatment, including a failure to quit smoking. The Seventh Circuit held this to be improper for a number of reasons including that (i) the ALJ did not find, and the record did not support such a finding, that cessation of smoking would restore the plaintiff's ability to work; (ii) no medical evidence linked the plaintiff's smoking habit to her alleged symptoms; and (iii) an inability to quit smoking says little about the severity of one's medical impairments given the addictive nature of the habit. Id. at 812-813. Relying on Shramek, the court in Deso v. Astrue similarly found that "an ALJ errs in finding that a claimant's failure to stop smoking automatically supports a negative credibility determination or a conclusion that the claimant's breathing symptoms are not severe." No. 2:10-CV-223, 2011 WL 5967181, at *3-4 (D. Vt. Nov. 29, 2011).

---

[2] While Plaintiff characterizes these statements as "out of context" in an earlier portion of his brief, Obj. at 3, the Court notes that these statements are often the only indication of how Plaintiff is doing at the time on an otherwise sparsely-filled record. See, e.g., A.R. at 455.

The Sixth Circuit, however, has taken a different approach and considers whether a claimant has followed a physician's advice to quit smoking to be a relevant factor in evaluating the claimant's credibility.  See Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 479-480 (6th Cir. 1988); see also Blaim, 2014 WL 6997509 at *1, 3; Brown v. Soc. Sec. Admin., 221 F.3d 1333, at *1 (6th Cir. 2000) (unpublished table decision); Barringer v. Comm'r of Soc. Sec., No. 13-CV-12746, 2014 WL 4064575, at *13 (E.D. Mich. Aug. 18, 2014); Sarver v. Comm'r of Soc. Sec., No. 07-11597, 2008 WL 3050392, at *6-7 (E.D. Mich. July 28, 2008).  Accordingly, the Court concludes that the ALJ did not err by considering Plaintiff's failure to quit smoking in making a credibility determination.

Finally, the ALJ's summary conclusion that smoking cessation and weight loss would restore Plaintiff's ability to engage in meaningful work also does not warrant remand.  Social Security Ruling 82-59 announces a policy by which claimants who would otherwise be found to be under a disability may be found not disabled by virtue of the claimant's failure to follow a prescribed treatment that would be expected to restore the claimant's ability to engage in meaningful work.  Soc. Sec. Rul. 82-59, 1982 WL 31384, at *1.  The policy lists a number of factors that must be considered and procedural protections that must be followed before an ALJ can deem a claimant not disabled due to a failure to follow a prescribed treatment.  See generally id.

While the ALJ expressly referenced Ruling 82-59 in finding that Plaintiff had failed to follow his physicians' recommendations to quit smoking and lose weight, A.R. at 31, the ALJ never found that the medical evidence demonstrated that Plaintiff's conditions precluded him from engaging in any substantial gainful activity — an essential prerequisite to the "failure to follow prescribed treatment" policy.  Soc. Sec. Rul. 82-59 at *1.  In fact, the ALJ's decision

demonstrates that the ALJ concluded precisely the opposite — that Plaintiff's impairments were not so severe as to preclude him from substantial gainful activity, and that Plaintiff was eligible for a restricted range of sedentary employment. Because the ALJ did not find Plaintiff to be under a disabling impairment in the first place, it appears that Ruling 82-59 would not be applicable to Plaintiff's claim. Although the basis for the reference is unclear, the Court cannot justify a remand on the grounds that the ALJ improperly applied an inapplicable standard.

## V. CONCLUSION

For the foregoing reasons, the Court accepts the recommendation contained in the Magistrate Judge's R&R (Dkt. 18), overrules Plaintiff's objections (Dkt. 19), grants Defendant's motion for summary judgment (Dkt. 16), and denies Plaintiff's motion for summary judgment (Dkt. 14).

SO ORDERED.

Dated: February 24, 2015  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 24, 2015.

s/Johnetta M. Curry-Williams
Case Manager